**Alex RATLIFF, Plaintiff,**

v.

**John W. GARDNER, Secretary Health, Education and Welfare, Defendant.**

**Civ. A. No. 66-C-23-A.**

United States District Court
W. D. Virginia,
Abingdon Division.
Feb. 21, 1968.

Ronald W. May, Pikeville, Ky., and W. Clyde Dennis, Grundy, Va., for plaintiff.

James B. Brice, Asst. U. S. Atty., Roanoke, Va., for defendant.

## OPINION and JUDGMENT

DALTON, Chief Judge.

From an adverse decision of the Secretary of Health, Education and Welfare rendered June 29, 1967, Alex Ratliff, married, the father of two children and a resident of Grundy, Virginia, has appealed to this court. Born October 8, 1928, he is now thirty-nine years of age. The possessor of a third grade education, he can sign his name, but is otherwise illiterate. Having delivered groceries at the age of fourteen as his first job, he left to join the Army. Following his discharge, he spent some six months as a logger, but since 1946, except for a brief attempt at farming in 1958, he has worked as a miner. He

has been unemployed since August 1964 when he left his job in the mines.

In his application filed December 15, 1964, Alex Ratliff claimed that he was forced to stop work because of a combination of ulcers, arthritis, and lung trouble. As his special insured status will not expire until June 1969, the Secretary's findings must necessarily have evaluated claimant's condition as of the date of the final decision; and so the Secretary found that as of June 29, 1967 claimant was suffering from a moderate degree of respiratory dysfunction which when taken in aggregate with his other ailments, precluded him from returning to the mines and allowed only light to moderate work. However, the Secretary also concluded that claimant was not disabled within the meaning of the Act as there existed in the local economy a number of jobs which in spite of his limited work capacity and education, he remained capable of performing.

■ The Secretary's conclusion that claimant suffers from a moderate lung impairment with concomitant ability to do no more than light to moderate work finds substantial support in the medical evidence. However, even a moderate lung impairment would preclude claimant from returning to his former work in the mines; and upon this resolution it became incumbent upon the Secretary to show that there existed in the local economy other jobs for which the claimant was still suited by reason of his physical and mental capabilities. Boyd v. Gardner, 377 F.2d 718 (4th Cir. 1967); Hilton v. Celebrezze, 367 F.2d 481 (4th Cir. 1966).

■■ This burden is not satisfied by placing in the record the testimony of a vocational expert who recites job classifications upon the authority of the Dictionary of Occupation Titles. Cyrus v. Celebrezze, 341 F.2d 192, 196–197 (4th Cir. 1965). In the present case, Dr. Carl F. Heiser testifying as a vocational expert, gave his opinion as to the type of work claimant was still capable of performing and whether jobs of the type he could perform were available in the vicinity of Grundy, Virginia. Dr. Heiser based his opinion on personal investigation and observation, and it was his conclusion that there existed suitable job opportunities for which claimant was qualified. Dr. Heiser appeared to conduct a diligent and competent investigation, nonetheless this court does not agree with the Secretary's decision that Dr. Heiser's testimony established that there existed suitable job opportunities within the relevant geographic area.

■ Determination of the relevant geographic area is a difficult question depending on the "circumstances of the particular case." Wimmer v. Celebrezze, 355 F.2d 289 (4th Cir. 1966). It is well settled that a claimant need not search the length and breadth of the country to find a suitable job that exists somewhere within the U. S. economy. Wimmer v. Celebrezze, supra; Massey v. Celebrezze, 345 F.2d 146, 153 (6th Cir. 1965). It is also clear that the Social Security statute is not intended to aid a claimant merely because he can't find work in his home town. Celebrezze v. O'Brient, 323 F.2d 989, 992 (5th Cir. 1963). But between these two established extremes, the demarkation of a suitable area becomes less definite. An area of two-hundred miles was held to be improper, Boyd v. Gardner, supra, and an area of one-hundred and fifty miles was deemed "wholly impractical". Cooke v. Celebrezze, 365 F.2d 425 (4th Cir. 1966), while in Gardner v. Smith, 368 F.2d 77, 83 (5th Cir. 1966) the court implied that a one-hundred and fifty mile area might be proper. Every individual laborer has a practical mobility, a market in which this laborer may realistically be expected to offer his services, and

the claimant's mobility turns on the 'circumstances of the particular case." 355 F.2d at 294. No general rule can satisfactorily adumbrate the precise circumstances that will be controlling in a specific case; the claimant's educational background, physical condition and family responsibilities are all relevant indicia of his geographical mobility. A person in a certain economic

and educational category might well be expected to seek employment in a wider area than would be reasonable for a person in different circumstances. Gardner v. Earnest, 371 F.2d 606, ft. 609–610 (4th Cir. 1967).

 On review of the "circumstances of the particular case," the court feels that a distance of fifty miles, suggested by claimant's counsel, was a suitable commuting distance for consideration. Confining himself to an area of fifty miles, Dr. Heiser was still able to list many jobs that were suitable for claimant. However, on cross examination, Dr. Heiser revealed further complicating facts with regard to these job opportunities. Dr. Heiser testified that larger firms with suitable jobs usually had employment insurance clauses which would prevent the hiring of an employee with claimant's medical history. Smaller companies did not usually require a physical examination, but such companies frequently require their employees to act as jacks-of-all-trades and perform duties for which they were not hired. Presumably such extra duties included work which claimant would be unable to perform because of his physical condition. Dr. Heiser knew of one job, spotter and cleaner in a dry cleaning firm, where claimant would not be required to perform extra duties. However, Dr. Heiser admitted that the fumes in such a dry cleaning firm might be aggravating to someone with claimant's lung condition. Thus claimant is faced with this dilemma. If he seeks employment with a large firm he will probably be denied employment because he cannot pass the required physical examination. On the other hand if claimant seeks employment with a small firm, he may be called on to perform duties which would aggravate his physical condition. Thus it appears that in reality claimant has no opportunity to engage in substantial gainful activity.

It is not enough that claimant has theoretical job opportunities, claimant must have a *practical, reasonable* opportunity to engage in substantial gainful activity. Thomas v. Celebrezze, 331 F.2d 541, 546 (4th Cir. 1964).

 Outside of the fifty mile commuting area, Dr. Heiser suggested that claimant might move his home one-hundred and thirty-five miles to the Blue Grass Region of Kentucky, where he could find work cleaning stables and caring for horses. Because of claimant's physical condition and the prospect of further declining health, this court feels that claimant is not a person of sufficient mobility to be required to move one-hundred and thirty-five miles from his home. Cooke v. Celebrezze, supra. Claimant offered substantial evidence that he has silicosis and that there already exists calcifications in his lungs. It is common knowledge that the condition of silicosis tends to worsen with time and to further incapacitate its victims. With such a bleak future it seems unreasonable to require claimant to move from the county where he has spent most of his life. Employers are concerned with substantial capacity, psychological stability and *steady attendance*. Thomas v. Celebrezze, supra. Should claimant's physical condition worsen, as is certainly possible, claimant might find himself stranded without a job in a new location where he came for the sole reason of finding employment.

For the reasons stated in this opinion and upon mature consideration of all records of the proceedings, this court feels that the Secretary has failed to establish that there existed in the local economy, jobs for which the claimant was still suited by reason of his physical and mental capabilities.

Therefore, it is hereby adjudged and ordered that claimant's motion for a summary judgment be, and hereby is granted.